607 F.2d 1229
 102 L.R.R.M. (BNA) 2492, 86 Lab.Cas. P 11,521
 William C. WAGGONER et al., etc., Appellants,
v.
R. McGRAY, INC., O'Shaughnessy Construction Company,
Tri-Central Construction Company, and Vernon
Houghton, Appellees.
C. William BURKE, et al., etc., Plaintiffs-Appellants,
v.
ERNEST W. HAHN, INC., etc., Defendant, Third-Party Plaintiff-Appellee,
v.
PETERSON BROTHERS EQUIPMENT CO., etc., Third-Party Defendant-Appellee.
 Nos. 77-2931, 77-3774 and 78-2067.
 United States Court of Appeals,
Ninth Circuit.
 Aug. 24, 1979.
Rehearing Denied Nov. 30, 1979.
 
 Albert Rush, Wayne Jett (argued), Los Angeles, Cal., Lewis Scott, Portland, Or., for appellants.
 John H. Stephens, William R. Harmsen, Los Angeles, Cal. (argued), Stafford, Buxbaum & Chakmak, Newport Beach, Cal., for appellees.
 Appeal from the United States District Court for the Central District of California.
 Before HUFSTEDLER and SNEED, Circuit Judges, and SPENCER WILLIAMS,* District Judge.
 HUFSTEDLER, Circuit Judge:
 
 
 1
 These consolidated appeals require us to decide whether a federal court may entertain an unfair labor practice defense to enforcement of a collective bargaining agreement in an action pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, before the National Labor Relations Board ("NLRB") has exercised primary jurisdiction over the unfair labor practice charge. We hold that the NLRB's primary jurisdiction precludes federal courts from acting as the initial arbiters of unfair labor practice charges in section 301 actions.
 
 
 2
 * Appellants are trustees of various employee benefit trusts established pursuant to the Master Labor Agreement between the International Union of Operating Engineers, Local Union No. 12 ("Local 12") and the Southern California General Contractors Associations, a group of multi-employer associations in the building and construction industry of Southern California. Appellees are construction industry employers who are signatories to the Master Labor Agreement with Local 12. The Master Labor Agreement requires signatory employers to make fringe benefit contributions to the trusts for each hour worked by (or paid) covered employees. Employers who fail to make the required contributions are placed on a "delinquency list," which the trustees distribute to the union and to each contractor association. The Master Labor Agreement prohibits signatory employers from subcontracting work to contractors on the delinquency list.[1] Employers who violate this provision are made liable for all accrued delinquencies of the subcontractor.[2]
 
 
 3
 R. McGray, Inc. ("McGray") and Peterson Brothers Equipment Company ("Peterson") were placed on the trusts' delinquency list on November 1, 1974, and January 10, 1975, respectively. O'Shaughnessy Construction Company ("O'Shaughnessy"), Tri-Central Construction Company ("Tri-Central"), and Vernon Houghton thereafter subcontracted covered work to McGray and Ernest W. Hahn, Inc. ("Hahn") subcontracted covered work to Peterson. On February 3, 1976, the trustees filed suit against Hahn, pursuant to section 301 of the Labor Management Relations Act, to enforce the terms of the Master Labor Agreement. Hahn later filed a third-party complaint seeking indemnification from Peterson. On October 18, 1976, the trustees filed a similar action against McGray, O'Shaughnessy, Tri-Central, and Houghton. In both actions the trustees sought recovery of fringe benefit contributions owed by the delinquent subcontractors pursuant to the terms of the Master Labor Agreement that made contractors liable for the accrued delinquencies of their subs.
 
 
 4
 In Waggoner v. R. McGray, Inc. (C.D.Cal.1977) 432 F.Supp. 580, the district court dismissed the trustees' complaint for failure to state a claim upon which relief can be granted. The court held that the provisions of the Master Labor Agreement that the trustees sought to enforce were "unenforceable and void" because they involved an unfair labor practice in violation of section 8(e) of the National Labor Relations Act, 29 U.S.C. § 158(e).[3] The court based its decision on the fact that the disputed provisions of the Master Labor Agreement were identical to those involved in Griffith Co. v. N. L. R. B. (9th Cir. 1976) 545 F.2d 1194.
 
 
 5
 In Griffith we reviewed the NLRB's dismissal of a contractor's complaint that the Master Labor Agreement involved an unfair labor practice by requiring contractors to cease doing business with delinquent subcontractors. We reversed the NLRB's determination that the disputed portions of the agreement involved lawful "primary" activity, but we remanded the case for the NLRB to consider whether the disputed provisions were valid nonetheless under the construction industry exception to section 8(e).
 
 
 6
 The district court in McGray concluded that "(a)lthough Griffith arose in the context of an unfair labor practice, the Ninth Circuit's conclusion therein brings into play the sanction found in Section 8(e) of the Act, namely, that such forbidden agreements are 'unenforceable and void.' " (Waggoner v. R. McGray, Inc., supra, 432 F.Supp. at 582.) The court rejected the trustees' claim that the agreement was protected by the construction industry exception to section 8(e). The court then concluded that the trustees could not state a claim because the contract provisions they sought to enforce were "against national labor policy as expressed in Section 8(e)" and thus "unenforceable and void." (Waggoner v. R. McGray, Inc., supra, 432 F.Supp. at 583.)
 
 
 7
 Following the rationale of McGray, the district court in Burke v. Ernest W. Hahn, Inc. granted summary judgment to defendants on January 23, 1978.
 
 II
 
 8
 In both of these cases the district courts refused to enforce the Master Labor Agreement on the theory that it embodied an unfair labor practice forbidden by section 8(e) of the National Labor Relations Act. Neither the NLRB nor this court, however, has declared the disputed provisions of the agreement an unfair labor practice. None of the defendants filed unfair labor practice charges with the NLRB based on the alleged illegality of the agreement. Although in Griffith we reversed the NLRB's decision that identical contract terms involved lawful primary activity, we reserved for the NLRB's determination the question whether the agreement was protected by the construction industry exception to section 8(e). In holding the agreement unenforceable, the district courts reached their own conclusions about the applicability of the construction industry exception to section 8(e). By deciding the merits of the unfair labor practice claims, the district courts deviated from the traditional practice of respecting the NLRB's primary jurisdiction over unfair labor practice charges.
 
 
 9
 The rationale of the primary jurisdiction principle was outlined by a unanimous Supreme Court in Garner v. Teamsters Union (1953) 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228. In discussing the congressionally-established scheme for regulation of labor practices, the Court said:
 
 
 10
 "Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. . . . A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law. The same reasoning which prohibits federal courts from intervening in such cases, except by way of review or on application of the federal Board, precludes state courts from doing so." (346 U.S. at 490-91, 74 S.Ct. at 166.)
 
 
 11
 Thus, the Supreme Court recognized that congressional commitment of authority over unfair labor practice disputes to the NLRB normally precludes state and federal courts from acting as the initial arbiters of unfair labor practice claims.
 
 
 12
 In subsequent cases, the Supreme Court has repeatedly reaffirmed Garner's explication of the rationale of the primary jurisdiction doctrine. (Sears, Roebuck & Co. v. Carpenters (1978) 436 U.S. 180, 191-93, 98 S.Ct. 1745, 56 L.Ed. 209; Motor Coach Employees v. Lockridge (1971) 403 U.S. 274, 287, 91 S.Ct. 1909, 29 L.Ed.2d 473; San Diego Building Trades Council v. Garmon (1959) 359 U.S. 236, 242-43, 79 S.Ct. 773, 3 L.Ed.2d 775.)[4] The difficult problem has been to define the scope of the doctrine's application.[5] In San Diego Building Trades Council v. Garmon, supra, the Court provided what has come to be accepted as the general guideline for determining the extent to which the NLRB's primary jurisdiction preempts state and federal courts from independently deciding questions of national labor policy. The Court held in Garmon that "(w)hen an activity is arguably subject to § 7 or § 8 of the (National Labor Relations) Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board . . . ." (359 U.S. at 245, 79 S.Ct. at 779-780.)
 
 
 13
 Although later cases have refined the Garmon standard, it remains the basic test for determining the extent to which state and federal courts must defer to the primary jurisdiction of the NLRB. (Sears, Roebuck & Co. v. Carpenters, supra; Burke v. Ernest W. Hahn, Inc. (9th Cir. 1979) 592 F.2d 542.) Under the primary jurisdiction doctrine as outlined in Garmon, "courts are not primary tribunals to adjudicate (unfair labor practices) issues. It is essential to the administration of the (National Labor Relations) Act that these determinations be left in the first instance to the National Labor Relations Board." (359 U.S. at 244-45, 79 S.Ct. at 779.) Our decision in Griffith was fully consistent with this principle. Griffith came before this court on a petition to review the NLRB's decision that the disputed clauses of the Master Labor Agreement involved lawful "primary activity" that was not an unfair labor practice under section 8(e). Only after the NLRB had made this initial determination did we consider the merits of the unfair labor practice claim. We reverse the NLRB's determination because we held that the NLRB had misinterpreted the legal distinction between primary and secondary activity. But we did not then reach our own conclusion about whether the disputed clauses involved an unfair labor practice under section 8(e) because the NLRB had not had an opportunity to consider whether the activity in question fell within the construction industry exception of that section.[6] Thus, we recognized in Griffith that the NLRB and not the courts should be the initial arbiter of unfair labor practice claims.
 
 
 14
 Appellees recognize that the primary jurisdiction principle normally precludes district courts from adjudicating the merits of unfair labor practices claims. However, appellees maintain that the district courts properly reached the merits of their section 8(e) defense because it arose in the context of a section 301 action. Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, grants district courts jurisdiction over "(s)uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . ."[7] Appellees maintain that because the district court had jurisdiction over the trustees' breach of contract claim under section 301, the court could properly decide the merits of their unfair labor practice defense to contract enforcement.
 
 
 15
 The Supreme Court explored the interaction of section 301 with the primary jurisdiction doctrine in Smith v. Evening News Association (1962) 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246, and Motor Coach Employees v. Lockridge (1971) 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473. In Smith v. Evening News Association the Court held that the Garmon principle did not preempt a court's jurisdiction over a section 301 action for a breach of contract that also was an unfair labor practice. The Court concluded that "(t)he authority of the (National Labor Relations) Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301." (Smith v. Evening News Association, supra, 371 U.S. at 197, 83 S.Ct. at 269.) The Court noted that there was no problem in the case of conflict between the court's enforcing a collective bargaining agreement and the NLRB's remedying unfair labor practices. Indeed, the NLRB actually supported the court's jurisdiction to remedy a contract breach that was also an unfair labor practice. (Smith v. Evening News Association, supra, 371 U.S. at 197-98 & n. 6, 83 S.Ct. 267.)[8]
 
 
 16
 In Motor Coach Employees v. Lockridge the Court indicated that although section 301 actions were exempted from the primary jurisdiction principle, that exemption applied only to the contract portion of such disputes. The Court explained that:
 
 
 17
 "(w)e have exempted § 301 suits from the Garmon principle because of the evident congressional determination that courts should be free to interpret and enforce collective-bargaining agreements even where that process may involve condemning or permitting conduct arguably subject to the protection or prohibition of the National Labor Relations Act. The legislative determination that courts are fully competent to resolve labor relations disputes through focusing on the terms of a collective-bargaining agreement cannot be said to sweep within it the same conclusion with regard to the terms of union-employee contracts that are said to be implied in law. That is why the principle of Smith v. Evening News is applicable only to those disputes that are governed by the terms of the collective-bargaining agreement itself." (403 U.S. at 300-01, 91 S.Ct. at 1925.)
 
 
 18
 Thus, Lockridge indicates that the primary jurisdiction principle is displaced in section 301 actions only to the extent that the section 301 action is governed by the terms of the collective bargaining agreement.
 
 
 19
 We have recognized previously that the primary jurisdiction principle does not deprive a district court of jurisdiction over an action to enforce a collective bargaining agreement. (Bartenders & Culinary Workers Union, Local 340 v. Howard Johnson Co. (9th Cir. 1976) 535 F.2d 1160, 1162; Plumbers & Steamfitters Union, Local 598 v. Dillion (9th Cir. 1958) 255 F.2d 820, 823.) But we have reserved judgment on the question whether a district court may entertain an unfair labor practice defense to contract enforcement in a section 301 action. (Plumbers & Steamfitters Union, Local 598 v. Dillion, supra (avoiding the issue on the grounds that the allegedly illegal provision of the contract was severable from the remainder).) Other circuits have sharply divided on the question. The Third Circuit has held that "(u)nder Garmon, . . . allegations of unfair labor practices and violations of section 8(e) (are) not proper defenses before (a) district court" in a section 301 action. (Huge v. Long's Hauling Co. (3rd Cir. 1978) 590 F.2d 457, 461; Mullins v. Kaiser Steel Corp. (D.D.C.1979) 466 F.Supp. 911 (district court cannot entertain a section 8(e) defense to a section 301 action).) Prior to the Supreme Court's decisions in Smith v. Evening News and Lockridge, the First Circuit, without discussing the primary jurisdiction question, affirmed a district court's refusal to enforce a union security clause on the grounds that it would involve a violation of section 8(a)(3). (Local 1898, I.A.M. v. Brake & Electric Sales Corp. (1st Cir. 1960) 279 F.2d 590.) The Second Circuit has held that the primary jurisdiction doctrine does not bar a district court from entertaining an employer's suit under section 301 seeking a declaratory judgment that a clause in a collective bargaining agreement is unenforceable as a violation of section 8(e). (Todd Shipyards Corp. v. Industrial Union of Marine & Shipbuilding Workers, Local 39 (2d Cir. 1965) 344 F.2d 107.)
 
 
 20
 Consideration of the history and purposes of the primary jurisdiction doctrine convinces us that district courts should not serve as the initial arbiters of unfair labor practice charges in section 301 actions. As the Supreme Court explained in Garmon, "the unifying consideration of our decisions has been regard to the fact that Congress has entrusted administration of the labor policy for the Nation to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience." (359 U.S. at 242, 79 S.Ct. at 778.) Respect for this congressional determination requires us to hold that district courts may not decide, independent of the NLRB, the merits of an unfair labor practice defense to enforcement of a collective bargaining agreement in a section 301 action.
 
 
 21
 The congressional scheme for centralized administration of national labor policy would be significantly undermined if courts were permitted to adjudicate unfair labor practice claims independent of the NLRB. The "risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the Garmon doctrine was designed to avoid," is greatest where the controversy presented to the court is identical to "that which could have been, but was not, presented to the Labor Board." (Sears, Roebuck & Co. v. Carpenters, supra, 436 U.S. at 197, 98 S.Ct. at 1758.) By entertaining a section 8(e) defense to enforcement of the Master Labor Agreement, the district courts here decided an issue that was identical to that which could have been presented to the NLRB in an unfair labor practice proceeding.[9] Thus, the primary jurisdiction doctrine should have precluded the district courts from deciding the merits of the appellees' unfair labor practice defense. (Sears, Roebuck & Co. v. Carpenters, supra, 436 U.S. at 202, 98 S.Ct. at 1760. ("The primary-jurisdiction rationale unquestionably requires that when the same controversy may be presented to the state court or the NLRB, it must be presented to the Board.").)
 
 
 22
 Courts and arbitrators are permitted to resolve disputes governed by the terms of collective bargaining agreements despite potential conflicts with the NLRB (Carey v. Westinghouse Electric Corp. (1964) 375 U.S. 261, 272, 84 S.Ct. 401, 11 L.Ed.2d 320), because of the national policy favoring resolution of labor disputes through mechanisms established by the parties to the disputes. (United Steelworkers v. Warrior & Gulf Navigation Co. (1960) 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409.) The district courts could properly exercise jurisdiction over the trustees' section 301 action to recover contributions due the trusts because it involved a dispute clearly "governed by the terms of the collective-bargaining agreement itself." (Motor Coach Employees v. Lockridge, supra, 403 U.S. at 301, 91 S.Ct. at 1925.) Appellees' defense that the contract involved an unfair labor practice in violation of section 8(e) belonged before the NLRB, however, and not before the district courts.
 
 
 23
 The appellees were the only parties who could have invoked the jurisdiction of the NLRB to hear their unfair labor practice charge.[10] Their failure to bring the matter before the Board does not justify the district courts' assertion of jurisdiction to decide the unfair labor practice claim. (Cf. Sears, Roebuck & Co. v. Carpenters, supra, 436 U.S. at 202-03, 98 S.Ct. 1745 (primary jurisdiction rationale not sufficient to preempt a court's jurisdiction when party whose claim would be preempted could not have presented unfair labor practice issue to the NLRB).) To hold otherwise would be to encourage parties to circumvent the congressionally-established scheme for resolution of unfair labor practice disputes by the NLRB. Because appellees failed to present their unfair labor practice allegations to the NLRB, the district courts should have decided the contract issues presented in the trustees' section 301 action without reference to appellees' unfair labor practice defense.
 
 
 24
 REVERSED.
 
 SPENCER WILLIAMS, District Judge, dissenting:
 
 25
 I respectfully dissent. Although I fully agree with the majority that district courts have no business determining unfair labor practices, I disagree with the majority's application of that principle. Section 8(e) condemns "hot cargo" agreements as unfair labor practices. It also specifically provides that "any contract or agreement entered into . . . containing such an agreement Shall be to such extent unenforcible and void." (emphasis added). Congress vested the district courts with jurisdiction under § 301 to enforce collective bargaining agreements. In my view, that jurisdiction includes the authority to determine whether the collective bargaining agreement sought to be enforced is illegal or against public policy.
 
 
 26
 It is probable that section 8(e) would not be a successful defense in this or in most cases for the same reasons that antitrust defenses to contract enforcement litigation rarely prevail. See Kelly v. Kosuga, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959). Such controversies raise competing public policies. One policy abhors illegal agreements, but the other views as more abhorrent the party who accepts the benefits of an illegal agreement and then cries "foul" when his performance is sought. As in the case of the antitrust defense, the "hot cargo" defense would succeed only where the court would itself be enforcing the Precise conduct made unlawful by section 8(e), thereby ordering the commission of an unfair labor practice. The cases before this court do not fall within that narrow category. At most, the court would be merely ordering the payment of contributions to the various funds. Accordingly, I agree with the majority that the Master Labor Agreement should be enforced according to its terms, but I disagree that the district court has no jurisdiction to determine whether the agreement violates section 8(e).
 
 
 
 *
 Honorable Spencer M. Williams, United States District Judge, Northern District of California, sitting by designation
 
 
 [1]
 Article I, section B(15) of the Master Labor Agreement provides in pertinent part: "(t)he Trustees of the Trust Funds, through their Administrator, shall furnish each Contractor Association and the Union, with a list of delinquent Contractors each month. The Contractor agrees that he will not subcontract any portion of his job to any Contractor whose name appears on the delinquent list unless such Contractor has paid all delinquent monies to the various Trust Funds."
 
 
 [2]
 Article I, section B(16) of the Master Labor Agreement provides: "(i)n the event the Contractor subcontracts to any such delinquent Subcontractor, in violation of the foregoing, the Contractor shall be liable to the Trustees for all accrued delinquencies of the Subcontractor and shall withhold sufficient funds from monies due or to become due such Subcontractor and shall pay the sums over to the Trust Funds. If a Subcontractor becomes delinquent after commencing work for the Contractor, the Contractor shall be liable for all delinquencies incurred on the job after ten (10) days following the date of the delinquency list on which the Subcontractor's name first appeared. The Contractor shall terminate the contract of the Subcontractor who fails to promptly correct his delinquency
 (a) Where the Contractor fails or refuses to make payments required under the above provisions, the Union shall have the right to withhold services from any or all jobs of such Contractor."
 
 
 [3]
 Section 8(e) of the National Labor Relations Act, 29 U.S.C. § 158(e), provides in pertinent part: "It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer . . . agrees . . . to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void: Provided, That nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work: . . ."
 
 
 [4]
 Although Garner and most of the subsequent cases involved efforts by state courts to regulate labor relations, the Court has made it clear that the primary jurisdiction doctrine applies with equal force to the federal courts. As the Court explained in Weber v. Anheuser-Busch, Inc. (1955) 348 U.S. 468, 479, 75 S.Ct. 480, 487, 99 L.Ed. 546: "(r)espondent itself alleged that the union conduct it was seeking to stop came within the prohibition of the federal Act, and yet it disregarded the Board and obtained relief from a state court. It is perfectly clear that had respondent gone first to a federal court instead of the state court, the federal court would have declined jurisdiction, at least as to the unfair labor practices, on the ground that exclusive primary jurisdiction was in the Board." (footnote omitted)
 
 
 [5]
 The Court's pre -Garmon efforts "to state a workable rule (of preemption) that comports reasonably with apparent congressional objectives" are discussed in Motor Coach Employees v. Lockridge, supra, 403 U.S. at 290-91, 91 S.Ct. at 1920
 
 
 [6]
 Griffith Co. v. NLRB, supra, 545 F.2d at 1203-1204 ("Since the NLRB concluded that the clauses and their enforcement were lawful primary activity, it did not reach a number of other issues raised by the parties. The Union and the trustees argued that even if the clauses are secondary, they are valid under the construction industry exception to section 8(e). . . . As the NLRB should have the opportunity to consider these issues first on remand, we do not reach them at this time." (footnote omitted).) Cf. NLRB v. Enterprise Association (1977) 429 U.S. 507, 522 n. 9, 97 S.Ct. 891, 51 L.Ed.2d 1; South Prairie Construction Co. v. Local No. 627, I.U.O.E. (1976) 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382
 
 
 [7]
 Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."
 
 
 [8]
 The Court had previously held that section 301 did not divest state courts of jurisdiction over suits to enforce collective bargaining agreements. (Charles Dowd Box Co. v. Courtney (1962) 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483.) In Dowd Box the Court observed that although the primary jurisdiction doctrine, for reasons outlined in Garner, precluded state jurisdiction over controversies arguably subject to the jurisdiction of the NLRB. "Congress expressly rejected that policy with respect to violations of collective bargaining agreements by rejecting the proposal that such violations be made unfair labor practices. Instead, Congress deliberately chose to leave the enforcement of collective agreements 'to the usual processes of the law.' " (368 U.S. at 513, 82 S.Ct. at 526.)
 
 
 [9]
 In ruling on the merits of appellees' section 8(a)(3) defense, the district court was not merely deciding the kind of "labor law questions that emerge as collateral issues in suits brought under independent federal remedies," unlike the situation in Connell Construction Co. v. Plumbers & Steamfitters Local 100 (1975) 421 U.S. 616, 626, 95 S.Ct. 1830, 1836, 44 L.Ed.2d 418. (Huge v. Long's Hauling Co., supra, 590 F.2d at 461; Mullins v. Kaiser Steel Corp., supra, 466 F.Supp. at 917.)
 
 
 [10]
 The trustees could not have presented the unfair labor practice issue to the NLRB because they were not parties to the collective bargaining agreement. (Cf. Lewis v. Benedict Coal Corp. (1960) 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (despite contractual breaches by union, trustees of pension fund may enforce terms of agreement against employer).)