C. William BURKE et al., etc., Plaintiffs,

v.

FRENCH EQUIPMENT RENTAL, INC. et al., Defendants.

No. 76–649–WMB.

United States District Court, C. D. California.

Sept. 30, 1980.

Christopher Laquer, Wayne Jett, Los Angeles, Cal., for plaintiffs.

Todd Sloan, Hill, Farrer & Burrill, Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION

WM. MATTHEW BYRNE, Jr., District Judge.

Plaintiffs in this action are trustees of various employee benefit trust funds established pursuant to written collective bargaining agreements between the International Union of Operating Engineers Local No. 12 ("Local 12") and the Southern California General Contractors Association ("Association"). Defendant Sully Miller Contracting Company ("Sully Miller") is a general contractor in the Southern California area and a member of the Association. As such, Sully Miller has been bound at all relevant times by the Master Labor Agreement ("MLA") and the Trust Agreements establishing the trusts. Defendant French Equipment Rental, Inc. ("French Equipment") is a California corporation engaged in business as a subcontractor and contractor. John French is the sole shareholder, president and only employee of French Equipment.

On March 13, 1972, French Equipment executed a short form agreement with Local 12, by which it agreed to be bound by the terms and conditions of the MLA, including those provisions that require contributions to the various trusts based upon the hours worked by employees who perform covered work.

Sully Miller issued a purchase order calling for French Equipment to perform certain excavation work. French made test excavations in March, 1975, and began working on the job site on November 3, 1975. While performing excavations for Sully Miller, French Equipment paid the required contributions to the trust funds on some, but not all, of the hours worked by John French, as the employee of French Equipment. On October 24, 1975, an auditor employed by plaintiffs examined the payroll books and records of French Equipment for the period between January 1, 1972 and September 30, 1975. Ultimately, plaintiffs determined that French owed the various trust funds an additional $4,036.79, plus liquidated damages in the amount of $403.68, for the hours worked by Mr. French for French Equipment, which were previously unreported.

After French Equipment's refusal to pay the assessed amount, it was placed on the delinquency list prepared by plaintiffs under Article I, Section B, Paragraph 15 of the MLA.[1] Under Article I, Section B, Paragraph 16, a general contractor, such as Sully Miller, agrees not to subcontract any portion of its construction work to a contractor whose name appears on that list.[2]

---

1. Paragraph 15 of the MLA reads:
   The Trustees of the Trust Funds, through their Administrator, shall furnish each Contractor Association and the Union, with a list of delinquent Contractors each month. The Contractor agrees that he will not subcontract any portion of his job to any Contractor whose name appears on the delinquent list unless such Contractor has paid all delinquent monies to the various Trust Funds. (a) Any disputes between the parties concerning the payment or nonpayment of monies due the Trust Funds are not subject to Article V of this Agreement.

2. Paragraph 16 of the MLA reads:
   In the event the Contractor subcontracts to any such delinquent Subcontractor, in violation of the foregoing, the Contractor shall be liable to the Trustees for all accrued delinquencies of the Subcontractor and shall withhold sufficient funds from monies due or to become due such Subcontractor and shall pay the sums over to the Trust Funds. If a Subcontractor becomes delinquent after commencing work for the Contractor, the Contractor shall be liable for all delinquencies incurred on the job after ten (10) days following the date of the delinquency list on which the Subcontractor's name first appeared. The Contractor shall terminate the contract of the Subcontractor who fails to promptly correct his delinquency.

Moreover, any contractor who subcontracts work to a contractor whose name appears on the delinquency list becomes liable to the trustees of the trust funds for all accrued delinquencies of the subcontractor. Sully Miller received actual notice of the alleged delinquency of French Equipment on February 10, 1976; after such notice it terminated its working relationship with French Equipment.

Plaintiffs have brought this suit against French Equipment and Sully Miller for the deficient contributions to the trust funds, liquidated damages, costs, attorney's fees and pre–judgment interest. Plaintiffs seek summary judgment against French Equipment and Sully Miller. Sully Miller has filed a cross–motion for summary judgment. The parties have filed a stipulation of facts and agree that no triable issues of fact remain.

### SUMMARY JUDGMENT AGAINST FRENCH EQUIPMENT

French Equipment has offered no opposition to plaintiffs' motion for summary judgment, which is sufficient grounds to grant the motion. Rule 3(f)(2), Local Rules of the Central District of California. Sully Miller, however, in support of its motion for summary judgment argues that under the Labor Management Relations Act, trust funds cannot require contributions on behalf of an employee (such as John French) who is the sole shareholder, president and only employee of the contractor. As adoption of this theory would relieve French Equipment of liability as well as Sully Miller, the Court will consider it as if French Equipment had raised it in opposition to plaintiffs' summary judgment motion.

Section 302(c)(5) of the National Labor Relations Act ("NLRA") permits the payment of money or other things of value by an employer

> to a trust fund established by such representative, *for the sole and exclusive benefit of the employees of such employer,* and their families and dependents . . . .

29 U.S.C. § 186(c)(5) (1976) (emphasis added). The term "employee" is defined in § 2(3) of the NLRA to exclude independent contractors and supervisors.[3] The term "supervisor" is defined in § 2(11) of the NLRA to mean

> any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment. 29 U.S.C. § 152(11) (1976).

Generally, § 302 prohibits employers making payments to, or receiving payments from, employees' representatives, in order "to prevent employers from tampering with the loyalty of union officials and to prevent union officials from extorting tribute from employers." *Turner v. Local 302, International Brotherhood of Teamsters*, 604 F.2d 1219, 1227 (9th Cir. 1979). Subsection (c)(5) provides an exception to this sweeping prohibition, allowing employers to make contributions to a trust fund established by employee representatives under certain conditions. One of those conditions is that the trust fund must be for the sole and exclusive benefit of the employees of the employer. 29 U.S.C. § 186(c)(5).

Sully Miller contends that under § 302(c)(5), the trust fund agreements should be interpreted to exclude contributions on behalf of "owner–employees" such as John French, because such individuals are either supervisors or employers and a trust fund that provides benefits for persons other than employees is illegal. *See Burroughs v. Board of Trustees*, 542 F.2d 1128 (9th Cir. 1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977); *Alvares v. Erickson*, 514 F.2d 156 (9th Cir.)

---

**3.** "The term 'employee' shall include any employee . . . , but shall not include . . . any individual having the status of an independent contractor, or any individual employed as a supervisor. . . ." 29 U.S.C. § 152(3) (1976).

*cert. denied*, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975). Sully Miller relies upon decisions of the National Labor Relations Board ("NLRB") holding that persons with substantial ownership in a business are employers, not employees, for the purposes of unfair labor practice proceedings or bargaining unit determinations. *Cerni Motor Sales, Inc.*, 201 N.L.R.B. 918, 918 (1973); *Associated Musicians of Greater New York, Local 802 (Random Travel, Inc.)*, 171 N.L.R.B. 1106, 1112 (1968), *Foam Rubber City # 2 of Florida, Inc.*, 167 N.L.R.B. 623, 624 (1967).

■ The issue presented is whether an individual who is the sole shareholder, president and only employee of a corporation can be considered an employee under § 302(c)(5). Neither the Supreme Court nor the Ninth Circuit has ruled on this question.[4]

The issue of whether sole proprietors and "owner–employees" can be considered employees under § 302(c)(5) has been examined by several courts in recent years.[5] At least one circuit court has held that an individual in a situation analogous to that of Mr. French can participate in an employee trust fund, notwithstanding the restriction in § 302(c)(5). *Reiherzer v. Shannon*, 581 F.2d 1266 (7th Cir. 1978). The plaintiff in that case was employed as a teamster truck driv-

er from 1949 to 1951. In 1951 he purchased the controlling share of stock of the trucking company for which he worked and became the president and chief executive officer of the company. By 1955 he owned 90 percent of the company's stock, although he continued to function as a day–to–day truck driver. He was paid a salary while the company paid the other truck drivers on an hourly basis. Pursuant to a collective bargaining agreement, Reiherzer made payments to an employee trust fund beginning in 1955 and continuing until 1968, when he retired. After finding that the terms of the trust fund plan did not exclude Reiherzer's participation, the Court concluded that the argument that Reiherzer was a "supervisor" and thus not an "employee" as that term is used in § 302(c)(5) was "without merit." 581 F.2d at 1275. The Court reasoned that when Congress explicitly excluded supervisors from the definition of employees in § 2(3) of the NLRA, it was concerned with whether supervisors should be able to band together in a union to bargain collectively with the employer, *see NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 279–84, 94 S.Ct. 1757, 1764–1766, 40 L.Ed.2d 134 (1974), and not with the question of the legitimate coverage of employee benefit trust funds. Therefore, the Court reasoned that the term "employees" has a broader scope under § 302(c)(5) than under other

---

**4.** The Supreme Court has considered a union pension plan that included supervisors, but there is no indication in the case that the propriety of such inclusion was questioned by the parties. *Florida Power & Light Co. v. International Brotherhood of Electrical Workers, Local 641*, 417 U.S. 790, 793, 94 S.Ct. 2737, 2739, 41 L.Ed.2d 477 (1974). In *Aitken v. IP & GCU Employer Retirement Fund*, 604 F.2d 1261, 1265 (9th Cir. 1979), the Court took note of "several cases to the effect that owners, partners, supervisors, and sole proprietors may be denied retirement benefits under section 302 plans designed for the exclusive benefits of 'employees.'" The Court did not have to decide if denial was required under § 302, however, because in that case the trust fund had determined that self-employed persons were not eligible for pension benefits as a matter of interpretation of the trust agreement. The Court upheld this interpretation, noting: "It may be possible to argue that in certain contexts a sole proprietor can be considered an employee; it was reasonable to reach the oppo-

site conclusion in this case." 604 F.2d at 1265. The question of whether sole proprietors or "owner employees" could be included in § 302 trust plan, left open in *Aitken*, is presented in the case at bar.

**5.** See cases cited in *Aitken v. IP & GCU Employer Retirement Fund*, 604 F.2d at 1265. Most of the cases listed were decided on grounds of contract interpretation or were not presented in a fashion to raise the issue squarely. Pension benefits have been extended to other individuals who would not qualify as "employees" under § 2(3) of the NLRA. In *Garvison v. Jensen*, 355 F.2d 487 (9th Cir. 1966), the Court held that trusts can receive contributions for benefits of union supervisors and provide benefits for retired employees. In *Blassie v. Kroger Co.*, 345 F.2d 58 (8th Cir. 1965), the Court held that § 302(c) did not prevent union officers from participating as beneficiaries of an employee benefit trust fund.

provisions of the NLRA and that the result would be absurd if an otherwise eligible worker who had made regular contributions to a trust fund would be unable to receive benefits because he was promoted to a supervisor. 581 F.2d at 1276.

Were this Court considering whether John French could be included in a bargaining unit of employees of French Equipment [6] it is likely that he would be excluded, either because he is an employer or a supervisor, as contended by Sully Miller,[7] or because he represents management. *See generally NLRB v. Yeshiva University*, 444 U.S. 672, 100 S.Ct. 856, 63 L.Ed.2d 115 (1980); *Beasley v. Food Fair of North Carolina, Inc.*, 416 U.S. 653, 94 S.Ct. 2023, 40 L.Ed.2d 443 (1974). The term "employees," however, can have a meaning in § 302(c)(5) different from its meaning in those sections of the NLRA that define employees eligible to be in bargaining units or to bring unfair labor practice charges. *Aitken v. IP & GCU–Employer Retirement Fund*, 604 F.2d 1261, 1268 (9th Cir. 1979), *citing Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971) (by analogy). In general, the NLRA requires a strict separation of supervisory and management personnel from employees in order to insure that agents of management will not be pressured by divided loyalties and to protect the labor organization against management influence. *Laborers and Hod Carriers Local 341 v. NLRB*, 564 F.2d 834 (9th Cir. 1977); *Mourning v. NLRB*, 559 F.2d 768 (D.C.Cir. 1977). These purposes have no application to questions under § 302(c)(5), which concerns the legality of employer's contributions to trust funds.

There is little opportunity for management to gain control over trust funds through the inclusion of individuals in the position of Mr. French in employer–financed employee benefit trust funds. Mr. French's inclusion will not give him a voice in union activities or in collective bargaining decisions. Nor will it subject him to "divided loyalties," as would including him in the bargaining unit. In fact, Mr. French need be loyal neither to the union nor to the employers, because Congress has carefully required such trust funds to remain independent of both. On the other hand, the inclusion of persons in Mr. French's position in the trust fund programs promotes the strong congressional policy to encourage financially sound employee trust funds. *See Thurber v. Western Conference of Teamsters Pension Plan*, 542 F.2d 1106 (9th Cir. 1976).

In *Aitken v. IP & GCU–Employer Retirement Fund*, 604 F.2d at 1268–69 n. 4, the Ninth Circuit stated, albeit in dictum:

> [I]t would appear anomalous if an interpretation of section 302(c)(5) were to preclude sole proprietors from participating in section 302(c)(5) retirement funds when the tax code has endorsed such a policy. [*See* 26 U.S.C. §§ 401(a), (c), (d) and 413(b)(3) (1976).] Further, although including an owner within the definition of an employee would be inconsistent with most provisions of the LMRA, which recognize the divergent interests of labor and management . . . we fail to see how including sole proprietors in the definition of employee under section 302(c)(5) would conflict with labor act policies—either those recognizing the labor–management separation or those designed to safeguard against improper payments between employers and employee representatives.

Guided by this reasoning, the Court concludes that § 302(c)(5) does not preclude the trust funds from demanding contributions from French Equipment on behalf of John

---

6. Such a determination is within the "primary jurisdiction" of the National Labor Relations Board and, therefore, is seldom, if ever, presented to a District Court for decision. *See Local 3 193 International Woodworkers of America v. Ketchikan Pulp Co.*, 611 F.2d 1295 (9th Cir. 1980).

7. In this case it is hard to understand how John French can be considered a supervisor, as there appear to have been no other employees of French Equipment for him to supervise. While theoretically he has the power to hire and fire and perform the other functions of a supervisor, in fact he did not do so.

French. Insofar as that is the sole defense to the summary judgment motion against French Equipment, plaintiffs' motion is granted against French Equipment and Sully Miller's argument that it has no derivative liability for accrued delinquencies is rejected.

## SUMMARY JUDGMENT AGAINST SULLY MILLER

Sully Miller next argues that even if the trust funds have an enforceable claim against French Equipment for unpaid contributions, they cannot require Sully Miller to pay the accrued delinquencies of French Equipment because Paragraphs 15 and 16 of the MLA, which authorize such payments, are illegal and void under § 8(e) of the NLRA.[8]

In *Griffith Co. v. NLRB*, 545 F.2d 1194 (9th Cir. 1976), *cert. denied sub nom. Waggoner v. Griffith Co.*, 434 U.S. 854, 98 S.Ct. 171, 54 L.Ed.2d 125 (1977), the Court considered precisely the same question in relation to the same contractual provision in an appeal of an NLRB decision enforcing the obligation of the contractor to cease doing business with delinquent subcontractors and to pay the accrued delinquencies of the subcontractors. The Court overruled the NLRB and concluded that the provisions in Paragraphs 15 and 16 of the MLA were "hot cargo" clauses violating § 8(e) of the NLRA as unlawful secondary activity. The NLRB in its previous determination, had not considered the applicability of the construction industry proviso of § 8(e) to the provisions in dispute. The Court refused to rule on whether Paragraphs 15 and 16 would be "saved" by this proviso, remanding the case to the NLRB, which has "primary jurisdiction" to interpret the NLRA, for an initial determination. 545 F.2d at 1204.

Thereafter, while the NLRB was still considering the *Griffith* remand, two district courts ruled that the disputed provisions of the MLA were not saved by the construction industry exception to § 8(e) and, therefore, refused to enforce those provisions in two separate cases. These cases were consolidated on appeal and reversed by the Ninth Circuit on the grounds that the district courts should have awaited an NLRB determination of whether the MLA provisions violated § 8(e). *Waggoner v. R. McGray, Inc.*, 607 F.2d 1229 (9th Cir. 1979) (*"McGray"*). The Court concluded that the district courts should have deferred to the "primary jurisdiction" of the NLRB rather than rule independently that the construction industry proviso did not save the provisions in question.

Ultimately, the NLRB ruled that the disputed provisions of the MLA were not saved by the construction industry proviso to § 8(e). Therefore, under the terms of § 8(e), the entire provisions were declared "unenforceable and void." *International Union of Operating Engineers Local 12 and Griffith Company*, 243 N.L.R.B. No. 153 (*"Griffith* remand").

The question presented in this case is whether the "primary jurisdiction" doctrine has been satisfied by the NLRB decision in the *Griffith* remand, thus allowing the Court to consider the illegality of the disputed MLA provisions as a defense to this contract enforcement action.[9]

---

**8.** Section 8(e) of the NLRA, 29 U.S.C. § 158(e) (1976), provides in part:

It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer . . . agrees . . . to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible [sic] and void: *Provided*, That nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construc-

tion industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work:
. . . .

**9.** The NLRB decided the *Griffith* remand some eighteen days before the Ninth Circuit decided *McGray*. As the *McGray* opinion does not mention the remand decision, the Court assumes that the *McGray* Court was unaware that the NLRB had acted in the *Griffith* remand. In any event, the decision in *McGray* would have been the same because the Court

■■ The doctrine of "primary jurisdiction" precludes state and federal courts from acting as the initial arbiters of unfair labor practice charges. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); *McGray*, 607 F.2d at 1233; *Burke v. Ernest W. Hahn, Inc.*, 592 F.2d 542 (9th Cir. 1979). The purpose of the doctrine is to allow the NLRB to shape a uniform national interpretation of federal labor laws and to prevent

[a] multiplicity of tribunals and a diversity of procedures [which] are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law.

*Garner v. Teamsters Union*, 346 U.S. 485, 490–91, 74 S.Ct. 161, 166, 98 L.Ed. 228 (1953), *quoted in McGray*, 607 F.2d at 1232–33. Some courts have interpreted this doctrine to preclude district courts from ever considering unfair labor practice claims as a defense to an action to enforce a labor contract. *Huge v. Long's Hauling Co.*, 590 F.2d 457, 461 (3d Cir. 1978), *cert. denied*, 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed.2d 285 (1979); *Mullins v. Kaiser Steel Corp.*, 466 F.Supp. 911 (D.D.C.1979). The Court, however, is guided by the language in *McGray*, wherein the Court held that

district courts may not decide, *independent of the NLRB*, the merits of an unfair labor practice defense to enforcement of a collective bargaining agreement in a section 301 action.

607 F.2d at 1235 (emphasis added). *McGray* clearly contemplates that there are circumstances in which a district court can consider such a defense, because otherwise the language "independent of the NLRB" has no meaning. In this case, the Court is not considering whether the disputed provisions of the MLA violate § 8(e) "independent of the NLRB," because the Court has the benefit of an NLRB adjudication of the identical provisions, in the same contract, considering the same relevant factual situation.

The goals of the "primary jurisdiction" doctrine are not interfered with when the district court considers an unfair labor practice defense in such a situation. There is no usurpation of the NLRB's right to make the initial determination of the unfair labor practice; nor is there a danger of incompatible or conflicting adjudications, because the Court is merely applying the ruling of the NLRB to another employer under the same contract. Indeed, the truly inconsistent result would be to allow plaintiffs to enforce a contractual provision of the MLA that has already been determined by the NLRB to violate § 8(e) of the NLRA. Such an interpretation would eviscerate the congressional determination that a contractual provision that violates § 8(e) is "unenforceable and void."

■ Therefore, the Court holds that where the NLRB has previously ruled that the disputed provisions of the same collective bargaining agreement are "unenforceable and void" because they violate § 8(e) of the NLRA, the doctrine of "primary jurisdiction" does not prevent the defendant from raising the illegality of the provisions as a defense to an action to enforce the contract. Following the decision in the *Griffith* remand, the Court holds that Paragraphs 15 and 16 of the MLA are void and unenforceable and that, as a result, Sully Miller has no obligation to pay the accrued delinquencies owed to plaintiffs by French Equipment. Plaintiffs' motion for summary judgment is denied; Sully Miller's motion for summary judgment is granted.

### ATTORNEY'S FEES

■ Finally, Sully Miller contends that it is entitled to an award of attorney's fees. The MLA contains a provision authorizing an award of attorney's fees to the trustees of the trust funds where legal action is taken against an employer for the collection of delinquent contributions. No reciprocal right is granted to employers under the MLA. Sully Miller, however, argues that

held that the trial court should not have considered the unfair labor practice independent of the NLRB. As the *Griffith* remand was decided

well after the two lower court opinions reviewed in *McGray*, remand would have been required.

the Court should adopt the provisions of § 1717, California Civil Code, which provides, in part:

> In any action on a contract, where such contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

Cal.Civ.Code § 1717 (West 1973). This statute was enacted to prevent one contracting party from gaining an unconscionable advantage over another through a unilateral attorney's fees provision. *System Investment Corp. v. Union Bank*, 21 Cal.App.3d 137, 163, 98 Cal.Rptr. 735, 752 (1971). Such an advantage is seldom realized in the bargaining process that leads to the creation of a Master Labor Agreement. In any event, the interpretation of a union pension fund agreement is a matter of federal common law, and not state law. *Aitken v. IP & GCU–Employer Retirement Fund*, 604 F.2d at 1264; *Thurber v. Western Conference of Teamsters Pension Plan*, 542 F.2d 1106. Federal policy favors interpreting such trust fund agreements to promote the fiscal stability of the trust funds. *Thurber*, 542 F.2d at 1109. An interpretation of the MLA that requires the trust funds to pay attorney's fees to the employer if unsuccessful in an enforcement action would have two detrimental effects on the trust funds. First, it would discourage trust funds from pursuing potentially valuable claims against employers for delinquent payments for fear that the liability for attorney's fees might outweigh the benefits to the trust fund if the suit proved successful. Second, an award of attorney's fees to the prevailing employer would inevitably diminish the amount in the trust fund available for the benefit of employees.

This Court declines to imply that the trust fund is obligated to pay attorney's fees to a prevailing employer merely because the employer has agreed in the MLA to pay attorney's fees to a prevailing trust fund.

Accordingly,

IT IS HEREBY ORDERED:

that plaintiffs' motion for summary judgment against French Equipment Rentals, Inc. is granted;

that plaintiffs' motion for summary judgment against Sully Miller Contracting Co. is denied;

that Sully Miller Contracting Co.'s motion for summary judgment against plaintiffs is granted;

and that Sully Miller Contracting Co.'s motion for an award of attorney's fees against plaintiffs is denied.