**C. William BURKE, et al.,
Plaintiffs-Appellants,**

**v.**

**FRENCH EQUIPMENT RENTAL, INC.,
and Sully Miller Contracting Co.,
Defendants-Appellees.**

**C. William BURKE, et al.,
Plaintiffs-Appellees,**

**v.**

**FRENCH EQUIPMENT RENTAL,
INC., Defendant,**

**and**

**Sully Miller Contracting Co.,
Defendant-Appellant.**

**Nos. 80–5800, 80–5857.**

United States Court of Appeals,
Ninth Circuit.

Argued Jan. 5, 1982.

Submitted Sept. 9, 1982.

Decided Sept. 15, 1982.

---

[*] Honorable Shiro Kashiwa, Associate Judge, United States Court of Claims, sitting by designation.

Wayne Jett, Jett, Clifford & Laquer, Los Angeles, Cal., for Burke.

James G. Johnson, Los Angeles, Cal., for French Equipment, etc.

Before FERGUSON, NELSON and REINHARDT, Circuit Judges.

FERGUSON, Circuit Judge:

## I. BACKGROUND

Sully Miller Contracting Co. ("Sully Miller") is a general contractor in Southern California and a member of the Associated General Contractors of California ("Association"). As such, Sully Miller is bound to the Master Labor Agreement ("MLA") between Local 12 of the International Union of Operating Engineers and the Association.

In late 1974 Sully Miller was awarded a contract by the Flood Control District of Los Angeles County. In order to complete the contract in the required time period, Sully Miller issued a sub-contract to French Equipment Rentals, Inc. ("French"). French had agreed in a "short term" collective bargaining agreement to be bound by the MLA between Local 12 and the Association. The sole shareholder and only employee of French is its president, John French.

In 1975, the Trustees of the Operating Engineers Health and Welfare Fund, Operating Engineers Pension Trust, and Operating Engineers Training Trust ("Trusts") determined that French owed money to the fund. French refused to pay the requested sum. As a result, the Trustees put French

on a delinquency list that is supplied to all the general contractors in the Association. After French's name had appeared on the delinquency list, Sully Miller continued to rely on French's services, in violation of Sully Miller's agreement with Local 12.[1] In 1976, the Trustees sent a letter to Sully Miller requesting that Sully Miller live up to its obligation under the MLA to cover for French, if French did not make its required contribution. Sully Miller declined to cover French's account. As a result, the Trustees filed suit against both French and Sully Miller under Section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185.

Sully Miller, in turn, filed an unfair labor practice charge against Local 12, alleging that the Trustees' suit was a violation of § 8(e) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(e). The NLRB regional director, acting on behalf of the General Counsel, dismissed the charge on the grounds that no evidence was found of any unlawful conduct by Local 12 within the six months' limitation period of § 10(b) of the NLRA, and that suit by the Trustees could not be an unfair labor practice because the Trustees were not acting as agents of a labor organization. Sully Miller appealed the dismissal of the charge. The appeal was dismissed by the General Counsel of the NLRB on substantially the same grounds as the original complaints.

Sully Miller then filed an additional unfair labor practice charge, Case No. 21–CE–274, alleging that Local 12 had violated § 8(e) by continuing the suit against Sully Miller and by renegotiating and extending the MLA. This charge was also dismissed. Sully Miller chose not to appeal the dismissal.

As a defense against the § 301 suit filed by the Trustees, however, Sully Miller once again raised Local 12's alleged violation of § 8(e) of the NLRA. This time Sully Miller argued that the agreement with Local 12 on which the Trustees based their claim was void under § 8(e) of the NLRA. Sully Miller also argued that French had no liability to the Trustees because under § 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), the Trustees could not require benefit contributions on behalf of an employee who is the sole shareholder or president of a corporation. Sully Miller also claimed attorneys' fees based on its interpretation of California Civil Code § 1717. Both the Trustees and Sully Miller filed motions for summary judgment. The district court held that the Trustees could collect fringe benefit contributions based on hours worked by John French without violating § 302(c)(5), but, on the basis that the subcontracting clause of the MLA was void under § 8(e), the court refused to uphold the Trustees' suit against Sully Miller. Thus, the court granted the Trustees' motion for summary judgment against French, but denied it against Sully Miller. Accordingly, Sully Miller's motion for summary judgment was granted as to the Trustees' claim against it. However, Sully Miller's claim for attorney's fees was denied.

We address three issues in this appeal:

1. Did the district court err in reaching the merits of, and upholding, Sully Miller's proffered § 8(e) defense to the Trustee's § 301 action?

2. Does John French's inability to qualify for benefits from the Trusts void the employer's obligation to make payments to the Trusts?

---

1. The district judge explained:

    After French Equipment's refusal to pay the assessed amount, it was placed on the delinquency list prepared by plaintiffs under Article I, Section B, Paragraph 15 of the MLA. Under Article I, Section B, Paragraph 16, a general contractor, such as Sully Miller, agrees not to subcontract any portion of its construction work to a contractor whose name appears on that list. Moreover, any contractor who subcontracts work to a con-

tractor whose name appears on the delinquency list becomes liable to the trustees of the trust funds for all accrued delinquencies of the subcontractor. Sully Miller received actual notice of the alleged delinquency of French Equipment on February 10, 1976; after such notice it terminated its working relationship with French Equipment.

*Burke v. French Equipment Rental*, 498 F.Supp. 94, 95–96 (C.D.Cal.1980) (footnotes omitted).

3. Did the district court correctly decline to apply a California statute as a basis for awarding attorneys' fees to Sully Miller in a § 301 action?

## II. IT WAS ERROR FOR THE DISTRICT COURT TO ENTERTAIN THE PROFFERED § 8(e) DEFENSE AND TO DECIDE ON THE MERITS IN FAVOR OF DEFENDANT SULLY MILLER.

In *Waggoner v. R. McGray, Inc.*, 607 F.2d 1229, 1235 (9th Cir. 1979), this court held that it was for the NLRB, rather than the district court, to decide the merits of any unfair labor practice defense to a § 301 action for enforcement of a collective bargaining agreement. Key to the court's holding in *McGray* is the need to maintain central administration of the unfair labor practice statute. Sully Miller argues that the court's decision in *McGray* was based on the rationale of exhaustion of administrative remedies, and that under that rationale a party should be free to relitigate the merits of an unfair labor practice charge in a suit brought in the district court under § 301, 29 U.S.C. § 185, as soon as the General Counsel of the NLRB has dismissed a charge under § 8(e) covering the same allegations. Exhaustion of administrative remedies, however, is not the rationale of *McGray*. Rather, that case is based on the need to protect the primary jurisdiction of the NLRB. Any doubt on the point was settled by our recent decision in *Waggoner v. Northwest Excavation, Inc.*, 642 F.2d 333 (9th Cir. 1981) [*Northwest*], vacated and remanded, 455 U.S. 931, 102 S.Ct. 1417, 71 L.Ed.2d 640 (1982) [2], in which this court disposed of the contention that a § 8(e) allegation could be raised as a legitimate defense to a § 301 charge when the NLRB had previously rejected such a charge:

> Northwest asserts that the district court should have refused to enforce the MLA on the theory that the MLA embodied an unfair labor practice forbidden by § 8(e) of the National Labor Relations Act, 29

U.S.C. § 158(e). We have previously held that "district courts may not decide, independent of the NLRB, the merits of an unfair labor practice defense to enforcement of a collective bargaining agreement in a section 301 action." *Waggoner v. R. McGray, Inc.*, 607 F.2d 1229, 1235 (9th Cir. 1979). *See also Orange Belt District Council of Painters No. 48 v. Maloney Specialties, Inc.*, 639 F.2d 487, 491 (9th Cir. 1980). Northwest attempts to distinguish *Waggoner [McGray]* on the ground that, unlike the employer in *Waggoner [McGray]*, Northwest filed unfair labor practice charges with the NLRB which were later dismissed. Northwest's distinction is unpersuasive. Collateral relitigation of charges dismissed by the NLRB is inconsistent with the policies expressed in *Waggoner*; accordingly, we decline to entertain Northwest's section 8(e) defense.

*Id.* at 338, n.2.

In light of *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982), *McGray* cannot be read as precluding courts from ever considering § 8(e) defenses in § 301 actions. To the extent that *McGray* is subject to such a broad reading, it is plainly overruled by *Kaiser*. In *Kaiser*, there had been no opportunity for an NLRB determination of the § 8(e) issue. In that situation, if a court were to enforce the collective bargaining agreement without entertaining the proffered § 8(e) defense, it would remain an open question whether the judicial power was being exercised to enforce a contract which Congress had declared to be "unenforcible [sic] and void," § 8(e) of the LMRA, 29 U.S.C. § 158(e); *Kaiser, supra*, at 84, 102 S.Ct. at 859. Therefore, the court held that in such a situation the court must entertain, and decide on the merits, a § 8(e) defense, where that defense "is raised by a party which § 8(e) is designed to protect, and where the defense is not directed to a collateral matter but to the portion of the contract for which enforcement is sought." *Kaiser, supra*, at 86, 102 S.Ct. at 860.

**2.** The Supreme Court remanded for the purpose of "further consideration in light of *Kaiser*

*Steel Corp. v. Mullins*, 455 U.S. 72 [102 S.Ct. 851, 70 L.Ed.2d 833] (1982)."

Long before its *Kaiser* decision, the Supreme Court, in *Garner v. Teamsters Union*, 346 U.S. 485, 491, 74 S.Ct. 161, 166, 98 L.Ed. 228 (1953), and a follow up case, *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244–45, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959), stated that the primary jurisdiction of the NLRB completely preempts court jurisdiction, except for authorized federal judicial review, unless the NLRB has determined that the disputed conduct is neither protected nor prohibited by the NLRA. *See Sears, Roebuck & Co. v. San Diego District Council of Carpenters*, 436 U.S. 180, 199 n.29, 98 S.Ct. 1745, 1758 n.29, 56 L.Ed.2d 209 (1978). The desire to protect the primary jurisdiction of the NLRB flows from the need to maintain centralized administration of the NLRA by a specialized agency. Labor law involves many difficult questions of policy best left to the agency that has the expertise needed to solve them. Thus, the courts have traditionally shown great deference to the NLRB. As this court recognized in *McGray, supra*, 607 F.2d at 1235, the risk of interference with the NLRB's central administration of the Act is great where the controversy presented to the court is one "which could have been, but was not presented to the Labor Board." When the controversy has been presented to the Board, and the General Counsel has dismissed the charges, as is the case here, interference with the NLRB would be even greater than it was in *McGray*, where no NLRB charges had been filed.

In light of these observations, we therefore have serious doubts whether it was proper for the district court to reach the merits of Sully Miller's § 8(e) defense at all. No doubt *Kaiser* makes clear that in at least some circumstances it will be incumbent upon the court to consider a proffered § 8(e) defense. But we find no indication in *Kaiser* that the Court meant to sweep away the entire jurisprudence of judicial deference to the expertise of the NLRB. The case before us, unlike *Kaiser*, is not one where the NLRB has had no opportunity to consider the merits of the § 8(e) defense. That issue has been presented to the Board

twice, and twice Sully Miller's contentions have been rejected. We think it is an open question of law, in the wake of *Kaiser*, whether the district court should have entertained the § 8(e) defense at all.

■ However, we expressly decline to hold that it is appropriate, after *Kaiser*, for the district court to entertain a § 8(e) defense in a case such as this. We need not reach the issue, for it is clear that even if the defense were entertained, it would have to be rejected in this case on the merits. The labor agreement upon which the present action was brought has been the subject of previous litigation under § 8(e) before the NLRB. In *Engineers Local No. 12 (Griffith Co.)*, 243 NLRB No. 153 (1979), *enforced sub nom. Griffith Co. v. NLRB*, 660 F.2d 406 (9th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 2903, 73 L.Ed.2d 1313 (1982), the NLRB determined that the only part of the delinquency provision here involved which is invalid is the self-help clause. The trustees do not now seek to enforce the self-help clause. They only seek to enforce Sully Miller's promise, contained elsewhere in the delinquency provision, to make payments to the pension fund. This court has held that except for the self-help clause, all of the delinquency provision, and specifically that portion raised by Sully Miller in its § 8(e) defense, is valid. *Griffith, supra*, 660 F.2d at 410. Thus, there is no merit to the § 8(e) defense offered by Sully Miller.

### III. A REMAND IS NECESSARY TO DETERMINE SULLY MILLER'S OBLIGATION TO MAKE PAYMENTS TO THE TRUSTS.

■ Sully Miller argues that John French does not qualify as an employee who can benefit from a trust established under § 302(c)(5) of the LMRA of 1947, as amended. 29 U.S.C. § 186(c)(5). However, French's obligation and Sully Miller's obligation to make payments to the Trust are not preconditioned by federal law upon there being any particular employee of the subcontractor who would qualify for the benefits of the trust. An employer's obliga-

tion to pay into a § 302(c)(5) trust can be measured by any standard acceptable to both the union and the employer. *Walsh v. Schlecht*, 429 U.S. 401, 97 S.Ct. 679, 50 L.Ed.2d 641 (1977); *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1114–15 (9th Cir. 1979). Thus, the obligations of French and Sully Miller to make payments to the Trust "measured by" the hours of employment of John French would be legal and enforceable even though John French might not himself be eligible for benefits.

On remand, the district court will have to examine the MLA to determine the contractual basis for Sully Miller's obligation to make payments for John French. In determining the amount due, if any, the district court may find it necessary to determine the time period during which the MLA imposed a duty on Sully Miller to pay into the Trust for French. Sully Miller's obligation might depend on when French's contract with Sully Miller began. Such issues are left to the determination of the district court.

## IV. THE DISTRICT COURT CORRECTLY DISMISSED SULLY MILLER'S CLAIM FOR ATTORNEY'S FEES.

■ *Waggoner v. Northwest Excavating, Inc.*, 642 F.2d 333 (9th Cir. 1981), *vacated and remanded on other grounds*, 455 U.S. 931, 102 S.Ct. 1417, 71 L.Ed.2d 640 (1982), is dispositive of Sully Miller's request for attorney's fees. The case addressed an employer's argument that Cal.Civ.Code § 1717 could be used to support an award of attorney's fees against trustees of a union trust fund:

> We read *Alyeska* [421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)], however, as imposing strict limits on the use of state law to support attorney's fees awards. Those limits were not overborne by the federal environmental policies asserted by the Wilderness Society in *Alyeska*. Nor are those limits overborne by the policies asserted by Northwest in this case. In fact, federal labor policy supports the district court's decision to decline to award fees under section 1717. "Courts must

always evaluate litigation under 301(a) with an eye to the policy of uniformity which the statute embodies." *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1111 (9th Cir. 1979). Uniformity would be defeated with few, if any, countervailing benefits, by applying fifty different state laws on the issue of attorney's fees. Of course, this example is distinguishable from the situation where the parties provide for attorney's fees in their collective bargaining agreement . . . .

Under the reasoning of *Northwest*, Sully Miller could not base a claim of attorney's fees on state law; the only possible basis for such a claim would be the provisions of the MLA. However, the MLA does not provide for Sully Miller's receipt of attorney's fees. Therefore, the district court correctly declined to award attorney's fees to Sully Miller.

## CONCLUSION

The district court's dismissal of the Trustees' suit is REVERSED. The district court's dismissal of Sully Miller's claim for attorney's fees is AFFIRMED. The case is REMANDED for further proceedings consistent with this opinion.