CEMENT MASONS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; Cement Masons Pension Trust Fund For Northern California; Cement Masons Vacation Trust Fund For Northern California; and Cement Masons Apprenticeship and Training Trust Fund For Northern California, Plaintiffs,

v.

KIRKWOOD–BLY, INC.; Does 1 through 10, inclusive, Defendants.

No. C–81–1349 RFP.

United States District Court, N. D. California.

Aug. 20, 1981.

Robert M. Hirsch, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for plaintiffs Cement Masons Health and Welfare Trust Fund for Northern California, et al.

Mark R. Thierman, Paul V. Simpson, Dennis B. Cook, Law Office of Mark R. Thierman, San Francisco, Cal., for defendant Kirkwood-Bly, Inc.

### MEMORANDUM AND ORDER

PECKHAM, Chief Judge.

Defendant Kirkwood-Bly, Inc. moves this court for an order dismissing this action

and/or for summary judgment. After hearing oral argument and having taken the matter under submission, it is the decision of this court to grant defendant's motion.

## STATEMENT OF FACTS

Plaintiffs are employee benefit trust funds established pursuant to the written collective bargaining agreement, known as the master agreement, between the District Council of Plasterers and Masons of Northern California and Assoc. General Contractors of America (employer). Until April 11, 1980, defendant was a member of a multi-employer group known as the Industrial Contractors (U.M.I.C.). Defendant asserts that it was not a member of any multi-employer association for purposes of bargaining with the District Council of Plasterers and Cement Masons Union. Defendant, however, was signatory to a memorandum agreement, on a single-employer basis, which also served to bind the signatory employer to the master and trust agreement.

Defendant terminated its obligation under the above agreements and stated that it would negotiate with the union on a single-employer basis by letter of April 11, 1980. The applicable contract provision read:

This agreement shall be effective as of June 16, 1977 . . . and shall remain in effect until June 15, 1980 and shall be renewed from year to year thereafter unless either of the Collective Bargaining Representatives shall give written notice to the other of a desire to change at least sixty (60) days prior to the date of the expiration of this agreement.

According to plaintiffs, individual negotiations between the defendant and the union are occurring presently. Moreover, defendant did not become signatory to the new master agreement entered into by the union with other employers which became effective June 16, 1980.[1]

Plaintiffs have brought suit to collect unpaid fringe benefit contributions owing to plaintiffs since June 15, 1980, the date on which the contract expired. Defendant moves to dismiss on the grounds that: (1) primary jurisdiction to hear this dispute rests with the N.L.R.B.; and (2) plaintiffs have failed to allege or assert majority status.

## ANALYSIS

Defendant's contention that this court lacks jurisdiction over plaintiffs' claim is, in the opinion of this court, meritorious. The question is somewhat complex and, apparently, is a matter of first impression.

■ Jurisdictional principles in labor disputes are relatively clear. Suits alleging unfair labor practices—that is, violations of 29 U.S.C. § 158—must be heard before the N.L.R.B.; district courts have no jurisdiction to consider these matters. In *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the Court held that "[w]hen an activity is arguably the subject of § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National

---

1. Plaintiffs argue that defendant's termination was ineffective since the letter notifying plaintiffs of defendant's intent to terminate the agreement specified June 30 as the expiration date, as opposed to June 15. The relevant language of defendant's letter, dated April 11, 1980, reads: "You are hereby notified that this company will not be bound by the Master Labor Agreement after June 30, 1980."

We find plaintiffs' argument to border on the frivolous. As provided in the agreement, defendants, within 60 days of June 15, unequivocally notified plaintiffs of its desire to terminate the agreement. That defendant indicated that it would abide by the old terms until June 30 is

irrelevant since an employer is at liberty to operate under terms of an expired agreement until a new agreement has been negotiated, and in some cases, may be obligated to do so. Undoubtedly, plaintiffs recognized the April 11 letter as constituting termination because, according to their own assertions, they are presently engaged in negotiations with the defendant.

The cases cited by plaintiffs are inapposite and do not support their hypertechnical reading of the April 11 letter or general labor law policy. We therefore conclude that defendants effectively terminated the 1977–1980 master agreement as it applied to them.

Labor Relations Board." 359 U.S. at 245, 79 S.Ct. at 780. On the other hand, suits to enforce provisions of the collective bargaining agreement are normally heard in the district court. 29 U.S.C. § 185(a) states:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . .

Moreover, it is well-settled that the principle enunciated in *Garmon* does not operate to preempt a court's jurisdiction over a section 301 (29 U.S.C. § 185) action for a breach of contract which is also an unfair labor practice. *See Smith v. Evening News Association*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). Finally, the Ninth Circuit has recently held that a district court may *not* entertain an unfair labor practice *defense* to a section 301 contract action. *Waggoner v. McGray, Inc.*, 607 F.2d 1229 (9th Cir. 1979). Other circuits, however, are sharply divided on the question.

■ With that framework in mind, we turn to an examination of the present case. Defendant, pursuant to a contract, was required to make contributions to employee benefit funds. On June 15, 1980, the contract terminated and defendant ceased making payments. Plaintiffs instituted this action to compel payment for moneys owed after June 15, 1980 to the present. Indeed, it is well-established in this circuit that, after the expiration of a collective bargaining agreement and during negotiations for a new one, the employer is required to continue trust fund contributions, see *Peerless Roofing Co. v. N.L.R.B.*, 641 F.2d 734 (9th Cir. 1981), since 29 U.S.C. section 158(a)(5) makes it an unfair labor practice for the employer to unilaterally change terms and conditions of employment following the expiration date of the agreement. Thus, in *Peerless Roofing*, the court, in enforcing the N.L.R.B.'s order, stated:

The collective bargaining agreement itself survives its expiration date for some purposes. During negotiations, the employer is required by § 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) (1976), to maintain the status quo, even following the expiration date of the agreement. (Citations omitted.) If the employer's obligation to make trust fund payments were terminated by the expiration of the agreement, the union would never have an opportunity to bargain over those contributions. This result would not advance national labor policy as articulated in the National Labor Relations Act.

641 F.2d at 736.

Defendant argues that any claim plaintiffs have for trust fund contributions arise by virtue of section 8(a)(5) of the Act. The *Garmon* doctrine vests primary jurisdiction of cases arising under the Act in the N.L.R.B. Thus, defendant urges that we dismiss the action. Plaintiffs, quoting language similar to what is quoted above, argue that the contract *itself* survives its expiration date. Hence, they argue that this is a suit under section 301—to enforce a collective bargaining agreement—and is therefore properly in the district court.

■ We believe that defendant's characterization is correct for several reasons. Most importantly, plaintiffs' suit depends entirely upon the existence of section 8(a)(5) which requires the employer to maintain the status quo during negotiations for a new collective bargaining agreement. This is obviously done in reference to the prior agreement, and, therefore, the collective bargaining agreement can be said to "survive" its expiration. However, it does so only because of section 8(a)(5). Plaintiffs cite no case, nor can we find any, which have permitted district courts to enforce properly expired collective bargaining agreements in a section 301 action.

Indeed, extensive research reveals that all cases establishing the principle that the employer must continue trust payments even after the expiration of the agreement arose from N.L.R.B. proceedings. *See Hinson v. N.L.R.B.*, 428 F.2d 133 (8th Cir. 1970); *Clear Pine Mouldings, Inc. v. N.L.R.B.*, 632 F.2d 721 (9th Cir. 1980); *Peerless Roofing Inc. v. N.L.R.B., supra. Denver Metro.*

*Assn. v. Journeyman Plumbers,* 586 F.2d 1367 (10th Cir. 1978), contrary to plaintiffs' assertions, simply does not stand for the proposition that actions to collect trust fund payments under expired contracts may be brought in district court. In *Denver Metro. Assn.,* the *employer* group filed suit against the unions and trustees, alleging that they had violated the "written agreement" and "equal representation" requirements of 29 U.S.C. § 186(c)(5)(B) in the administration of various trust funds. Further, plaintiffs there alleged that the failure of the union trustees to administer the funds in conformity with section 186 constituted a breach of the unexpired collective bargaining agreements between the parties. Thus, the district court properly took jurisdiction under section 301. The question we are concerned with in the present case—whether an expired collective bargaining agreement can be enforced in district court for the purposes of collecting trust fund payments—was not remotely in issue in *Denver Metro. Assn.*

Perhaps plaintiffs' confusion in this case arises from 29 U.S.C. § 186(c) which makes illegal any payment by an employer to the representative of his employees *except, inter alia,* when paid to a trust fund meeting specified requirements, one of which is that "the detailed basis on which such payments are to be made is specified in a *written agreement* with the employer." This statute was obviously targeted at the elimination of the corruption of the collective bargaining process.

Courts, when attempting to enforce N.L.R.B.'s orders that payments be made to trust funds after the expiration of the collective bargaining agreement, were confronted with the employer's argument that no written agreement exists after the collective bargaining agreement expires. Thus, employers argued that they were forbidden by Congress from making payments to trust funds after the expiration of the collective bargaining agreement.

In response to this line of argument, courts have uniformly held that the trust agreements executed separately from collective bargaining agreements satisfy the statutory prerequisite of a "written agreement." Thus, there is some language in these cases that trust payments made after the expiration of the collective bargaining agreement are still "under" written agreements. Plaintiffs in the case at bar use this language to argue that their suit is one which arises under an agreement and is therefore properly in district court. This argument is flawed. In *Hinson v. N.L.R.B., supra,* the court explained the function of the trust agreement in these kinds of lawsuits:

> We have previously alluded to petitioner's limited obligation *post* contract expiration to maintain the status quo as to those terms and conditions of employment which are subjects of mandatory bargaining, until and unless he afford the Union an opportunity to bargain. Since the status quo is quite obviously defined by reference to the substantive terms of the expired contract, it follows that, in a limited and special sense, those pertinent contractual terms "survive" the expiration date. [Citation omitted.] In tandem with this "survival," the separate trust fund agreements have a continuing viability for petitioner as marking the framework under which benefit payments will be administered and disbursed, thereby providing that safeguard which the framers of the statute clearly intended.

428 F.2d at 139.

Thus, the language quoted by plaintiffs in their brief (to the effect that payments continuing beyond the expiration date of a collective bargaining agreement pending the negotiation and acceptance of a new agreement are still under a written agreement) does not establish plaintiffs' jurisdiction in this court. As the court in *Hinson* indicated, these agreements do not "survive" in the sense that they continue as legally operative documents; rather, the *terms* "survive" in order to define the parameters of the employer's obligation under section 8(a)(5) to maintain the status quo during negotiations.

Plaintiffs also cite *Nolde Bros. v. Local No. 358, Bakery and Confectioner Workers Union, AFL–CIO*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977) for the proposition that trust funds are entitled to seek enforcement of the trust agreement in district court. In *Nolde Bros.*, the Court recognized the propriety of a section 301 suit in district court brought by a union to enforce the arbitration provision of a collective bargaining agreement which had terminated. The Court premised its holding on their interpretation of the parties' intent, finding that the parties intended the arbitration clause to apply to disputes regarding the contract even though the disputes may arise after the termination of the contract. The Court did not hold that parties are entitled to enforce expired contracts in federal court under section 301.

Finally, courts are generally highly differential to the jurisdiction of the N.L.R.B. Indeed, *Waggoner's* holding that a district court may entertain a breach of contract action but may not entertain a defense to that action if the defense is premised on an unfair labor practice is a testament to the breadth of the N.L.R.B.'s primary jurisdiction over violations of the Act.

## CONCLUSION

For the reasons stated above, we grant defendant's motion for summary judgment.[2] Because we find that this court lacks jurisdiction to consider this dispute, we make no ruling on defendant's argument that plaintiffs must allege majority status in order to prevail.[3]

SO ORDERED.

[2] Plaintiffs do not argue that defendants have violated section 515 of ERISA, 29 U.S.C. § 1145, which specifically requires employers who are signatory to a collectively bargained multi-employer plan to make payments in accordance with the terms of the agreement. In fact, plaintiffs do not allege any ERISA violation or that ERISA can provide an alternate basis for jurisdiction. Instead, plaintiffs simply argue that ERISA does not prohibit this court from exercising jurisdiction over plaintiffs' alleged section 301 claim. While there may be merit to plaintiffs' argument that ERISA does not preempt section 301 jurisdiction, we have concluded that plaintiffs' suit cannot properly be maintained under section 301.

[3] In their Supplement Brief opposing this motion, plaintiffs seek relief from the judgment entered in *Laborers Health and Welfare Trust Funds, et al. v. Kirkwood Bly, Inc.*, No. C–81–0736 RFP. This court cannot recognize such a request in the form in which it was made. Plaintiffs are, of course, free to make such a motion in accordance with the Local Rules of the Federal Rules of Civil Procedure.