**U.A. 198 HEALTH & WELFARE, EDUCATION & PENSION FUNDS, Plaintiff-Appellant,**

v.

**RESTER REFRIGERATION SERVICE, INC., Defendant-Appellee.**

No. 85–3453.

United States Court of Appeals, Fifth Circuit.

May 23, 1986.

Louis L. Robein, Jr., Metairie, La., for plaintiff-appellant.

Daniel K. Rester, Charles M. Raymond, Baton Rouge, La., for defendant-appellee.

Before WISDOM, REAVLEY, and JOHNSON, Circuit Judges.

WISDOM, Circuit Judge:

■ This appeal presents the question whether federal courts have subject matter jurisdiction over an action by a union trust fund, under the Employee Retirement Income Security Act of 1974 (ERISA), against the employer to collect unpaid contributions accruing after the expiration of a collective bargaining agreement. We hold that the National Labor Relations Act preempts the fund's ERISA action. The National Labor Relations Board has "primary jurisdiction" to decide the basic issue.[1] The Court of Appeals for the Ninth Circuit has reached the same result in a similar case.[2]

## I.

The plaintiffs, United Association Local 198 Health & Welfare, Education & Welfare Funds (Funds), are employee benefit trust funds established under collective bargaining agreements between Local Union 198, representing plumbers and pipefitters in the Baton Rouge area, and various pipefitting and plumbing contractors. Rester Refrigeration, Inc. was obligated to contribute to the Funds under a collective bargaining agreement between Local 198 and Associated Mechanical Contractors of Baton Rouge. Rester stopped contributing to the Funds when the agreement expired on April 30, 1984. Rester takes the position that its obligation to contribute ended on April 30 because its contract negotiations with Local 198 had reached an impasse on that date. The Funds dispute whether negotiations were at an impasse on April 30.

The Funds sued in district court to recover contributions allegedly due after the contract expired but before any impasse. The complaint alleges jurisdiction under § 301(a) of the Labor Management Relations Act,[3] and §§ 502 and 515 of ERISA.[4]

---

1. We use the term "primary jurisdiction" in the sense in which the United States Supreme Court used it in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959). "When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board...." 359 U.S. at 245, 79 S.Ct. at 780.

In this opinion, the term 'primary jurisdiction' is used to refer to the various considerations articulated in Garmon and its progeny that militate in favor of pre-empting state-court jurisdiction over activity which is subject to the unfair labor practice jurisdiction of the federal Board. This use of the term should not be confused with the doctrine of primary jurisdiction, which has been described by Professor Davis as follows:

"The precise function of the doctrine of primary jurisdiction is to guide a court in determining whether the court should refrain from exercising its jurisdiction until after an administrative agency has determined some question or some aspect of some question arising in the proceeding before the court.

"The doctrine of primary jurisdiction does not necessarily allocate power between courts and agencies, for it governs only the question whether court or agency will *initially* decide a particular issue, not the question whether court or agency will *finally* decide the issue." 3 K. Davis, Administrative Law Treatise § 19.01, p 3 (1958) (emphasis in original).

While the considerations underlying Garmon are similar to those underlying the primary-jurisdiction doctrine, the consequences of the two doctrines are therefore different. Where applicable, the Garmon doctrine completely pre-empts state-court jurisdiction unless the Board determines that the disputed conduct is neither protected nor prohibited by the federal Act.

*Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180, 199, n. 29, 98 S.Ct. 1745, 1758, n. 29, 56 L.Ed.2d 209 (1978).

2. *Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co., Inc.*, 779 F.2d 497 (9th Cir.1985); *see also Office and Professional Employees Insurance Trust Fund v. Laborers Funds Administrative Office, Inc.*, 783 F.2d 919 (9th Cir.1986).

3. 29 U.S.C. § 185(a).

4. 29 U.S.C. §§ 1132, 1145.

The district court held that it lacked subject matter jurisdiction under either statute and dismissed the action.[5] On appeal, the Funds have abandoned their argument under § 301(a) of the Labor Management Relations Act.

## II.

■ An employer must honor the terms and conditions of an expired collective bargaining agreement until a new agreement is reached or until contract negotiations offer no hope of reaching an agreement.[6] Failure to honor an expired agreement before impasse is an unfair labor practice under §§ 8(a)(1) and (5) of the National Labor Relations Act (NLRA).[7] On the merits, therefore, this dispute will turn on whether negotiations between Rester and Local 198 had reached an impasse by April 30.

■ Perhaps no principle of labor law is better established than that the Board should make the initial determination whether challenged action constitutes an unfair labor practice. "As a general rule, federal courts do not have jurisdiction over activity which 'is arguably subject to § 7 or § 8 of the [NLRA],' and they 'must defer to the exclusive competence of the National Labor Relations Board.' "[8]

Congress has, however, created exceptions to the general principle that the NLRA has primary jurisdiction over unfair labor practice claims. For example, parties may sue in federal court to enforce collective bargaining agreements under § 301(a) of the Labor Management Relations Act.[9] Because the Funds do not challenge the district court's holding that it lacks jurisdiction under § 301(a), we do not decide that question.[10]

As an important exception, ERISA permits trust funds to sue employers for certain unpaid contributions to the fund. Section 515 of ERISA provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.[11]

Section 502(a)(3) of ERISA authorizes civil actions in federal district court to collect unpaid contributions due under § 515.[12]

---

**5.** *U.A. 198 Health & Welfare, Education & Pension Funds v. Rester Refrigeration Service, Inc.,* 612 F.Supp. 1033 (M.D.La.1985).

**6.** *NLRB v. Katz,* 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962).

**7.** 29 U.S.C. §§ 158(a)(1), (5). *NLRB v. Haberman Construction Co.,* 641 F.2d 351, 357 (5th Cir.1981) (en banc).

**8.** *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83, 102 S.Ct. 851, 859, 70 L.Ed.2d 833 (1982), *quoting San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959).

**9.** Section 301(a) provides:
Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
29 U.S.C. § 185(a).

**10.** The district court reasoned that failure to honor contract terms after the contract expires is not a violation of the contract cognizable under § 301(a). The employer's obligation to contribute to the Funds from the date the contract expires to the date of impasse is created by statute rather than by contract. The district court adopted the reasoning of *Cement Masons Health & Welfare Trust Fund v. Kirkwood-Bly, Inc.,* 520 F.Supp. 942 (N.D.Cal.1981), *aff'd,* 692 F.2d 641 (9th Cir.1982).

**11.** 29 U.S.C. § 1145.

**12.** Section 502 provides in part:
A civil action may be brought ... by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.
29 U.S.C. § 1132(a)(3).

The parties agree that ERISA authorizes union trust funds to sue in federal court for contributions accruing while the collective bargaining agreement remains in force. The Funds contend that the statute also authorizes suits for contributions accruing after the collective bargaining agreement has expired, because negotiations had not come to an end.

### III.

We find little guidance in the language or the legislative history of the Multiemployer Pension Plan Amendments Act of 1980.[13] Elsewhere in the Act, the "obligation to contribute" is defined as "an obligation ... arising (1) under one or more collective bargaining (or related) agreements, or (2) as a result of a duty under applicable labor-management relations law." [14] The statute provides no other definition. We decline to engraft the definition of § 4212 onto § 515. Section 515 applies to employers "obligated to make contributions ... under the terms of a collectively bargained agreement." Congress was aware of the fact that obligations to contribute to employee trust funds arise under labor law as well as under collective bargaining agreements.[15] Had Congress intended to cover both classes of obligations in § 515, the most natural and effective way to express that intent would have been to duplicate the language of § 4212 in § 515. That Congress did not do so indicates that it did not intend § 515 to apply to obligations created by the labor statutes.

Congress enacted § 515 because "simple collection actions brought by plan trustees have been converted into lengthy, costly and complex litigation concerning claims and defenses unrelated to the employer's promise and the plans' entitlement to the contributions.[16] We find in the legislative history no convincing evidence that Congress considered the application of § 515 to obligations accruing after an agreement expires.[17]

We would require plain language in the statute or compelling reasons in the legislative history to depart from the primary jurisdiction accorded the NLRB. The key issue on the merits is whether the parties have reached an impasse. To resolve this issue, the factfinder must consider a variety of factors such as the bargaining history, the importance of the issue or issues on which the parties disagree, the number of meetings between the parties, the length of the meetings, and the amount of time elapsed since negotiations began.[18] The outcome often turns on slight factual differences. Because of its specialized expertise, the Board is particularly qualified to decide such a question.

\*     \*     \*     \*     \*     \*

13. Pub.L. 96–364, 94 Stat. 1295, 29 U.S.C. § 1001a et seq.

14. ERISA § 4212, 29 U.S.C. § 1392(a). Section 4212 defines "obligation to contribute" "[f]or purposes of this part". Section 4212 therefore refers to Subchapter III, Subtitle E, Part I of ERISA, headed "Employer Withdrawals". Section 515 is located in Subchapter I, Subtitle B, Part 5 of the statute.

15. 29 U.S.C. § 1392(a).

16. Staff of Senate Comm. on Labor and Human Resources, 96th Cong., 2d Sess., S 1076—The Multiemployer Pension Plan Amendments Act of 1980: Summary and Analysis of Consideration 44 (Comm. Print 1980); *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 87, 102 S.Ct. 851, 861, 70 L.Ed.2d 833 (1982).

17. Both sponsors of the bill stated that it "imposes a Federal statutory duty to contribute on employers that are already obligated to make contributions to multiemployer plans". 126 Cong.Rec. 23039 (statement of Rep. Thompson); *id.* at 23288 (statement of Sen. Williams). The Committee Print states that § 515 is intended to prevent "complex litigation concerning claims and defenses unrelated to the employer's promise and the Plan's entitlement to the contributions." Senate Comm. on Labor and Human Resources, 96th Cong., 2nd Sess. at 44 (Comm. Print 1980). The statements in the Congressional Record, taken alone, might be viewed as supporting the Fund's position. The statement in the Committee Print, taken alone, might be viewed as supporting the employer's position. We decline to attach great significance to either statement.

18. *See* R. Gorman, *Basic Text on Labor Law, Unionization and Collective Bargaining* 448 (1976).

Our decision today does not foreclose the Funds from obtaining relief by filing an unfair labor practice charge with the Board.

The judgment of the district court is AFFIRMED without prejudice to the plaintiffs' right to assert its claim before the National Labor Relations Board and to take future appropriate action in the courts.