110 F.3d 64
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Donald SLONE and Vicki Slone, Plaintiffs-Appellants,
v.
MARTIN MARIETTA ENERGY SYSTEMS, INC., Defendant-Appellee.
 No. 95-4182.
 United States Court of Appeals, Sixth Circuit.
 March 26, 1997.
 
 Before: RYAN and BATCHELDER, Circuit Judges; MILES, District Judge.[1]
 PER CURIAM.
 
 
 1
 Plaintiffs Donald and Vicki Slone appeal the district court's grant of summary judgment in favor of Defendant Martin Marietta Energy Systems on their state law breach of contract, intentional infliction of emotional distress, and loss of consortium claims. For the following reasons, we AFFIRM the judgment of the district court.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 2
 Donald Slone began working for Martin Marietta Energy Systems as an instrument mechanic in 1986. While so employed, he was a member of the Oil, Chemical, & Atomic Workers International Union, Local Number 3-689 ("Union"). In July 1990, Slone injured his back while at work. Due to the severity of his injury, Slone was required to take a medical leave of absence from Martin Marietta. Slone subsequently filed a worker's compensation claim.
 
 
 3
 In May 1991, while Slone was on medical leave, the collective bargaining agreement between Martin Marietta and the Union expired. Although the parties made serious efforts to develop a new bargaining agreement, negotiations deteriorated and the Union went on strike in June. The parties, however, continued negotiations.
 
 
 4
 Sometime during the strike, Slone applied with Martin Marietta for a disability loan pursuant to the terms of the expired bargaining agreement. Martin Marietta denied Slone's application, explaining that it could not authorize Slone's loan because there was no longer a bargaining agreement explicitly permitting disability loans. Martin Marietta informed Slone that he could reapply after a new agreement was reached.
 
 
 5
 In April 1992, although the parties still had not agreed on the terms of the new bargaining agreement, the Union offered to return to work. Slone was still on medical leave when this occurred. Martin Marietta, in conjunction with the Union's offer, scheduled Slone for a medical examination with the company's physician in order to determine Slone's vocational abilities. The physician authorized Slone's return under certain restrictions. Slone, however, refused to return to work, claiming that his personal physician had not authorized him to do so. Accordingly, Martin Marietta notified Slone that it considered him to have voluntarily resigned his employment in accordance with Article IX, Section 4, of the expired bargaining agreement. Section 4 provides that "an employee who does not return to work by the fourth scheduled working day following the expiration of a leave of absence or any extension thereof without notifying the Company shall be considered to have resigned voluntarily." Slone denied that he resigned, arguing that his leave of absence had not officially expired because his physician had not authorized his return to work.
 
 
 6
 Slone contacted the Union for assistance in fighting Martin Marietta's decision. The Union president wrote a letter to Martin Marietta requesting Slone's immediate reinstatement. When this did not work, the Union filed a grievance alleging that Martin Marietta's conduct violated Article IX, Section 4, of the expired bargaining agreement. Martin Marietta rejected the grievance and adopted its original position.
 
 
 7
 The Union also filed a grievance alleging that Martin Marietta's decision to deny Slone's request for a disability loan contravened Articles XV and XVI of the expired bargaining agreement. Martin Marietta rejected this grievance.
 
 
 8
 Unsatisfied with these results, Slone turned to the courts. In December 1992, Donald and Vicki Slone filed suit in the Pike County Court of Common Pleas. Their complaint alleged four separate claims: (1) breach of an implied contract of continued employment and covenants of good faith and fair dealing; (2) retaliatory discharge in violation of OHIO REV.CODE ANN. § 4123.90 (Anderson 1995); (3) intentional infliction of emotional distress; and (4) loss of consortium. The suit was subsequently removed to federal court pursuant to 28 U.S.C. §§ 1441 and 1446.
 
 
 9
 Martin Marietta moved for summary judgment on all counts. The district court granted the motion on counts 1, 3, and 4, and remanded count 2 to state court. The Slones filed a timely notice of appeal.
 
 II. DISCUSSION
 
 10
 We review de novo a district court's decision to grant a motion for summary judgment, Moore v. Holbrook, 2 F.3d 697, 698 (6th Cir.1993), drawing all reasonable inferences in favor of the nonmoving party. Bush v. Rauch, 38 F.3d 842, 846 (6th Cir.1994).
 
 A.
 
 11
 Slone claims that Martin Marietta breached an implied contract of continued employment and covenants of good faith and fair dealing when it failed to follow its work rules and policies in effectuating Slone's constructive discharge. Slone further alleges that Martin Marietta breached implied promises, assertions, and agreements by failing to authorize a loan that Slone had applied for under the terms of the expired bargaining agreement. The district court ruled that these claims were preempted by federal labor law. We agree.
 
 
 12
 In San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 245 (1959), the Supreme Court stated that the National Labor Relations Act ("NLRA" or "Act") preempts state law claims that are based on conduct which is arguably subject to either section 7 or 8 of the Act. Although courts should not apply the Garmon rules in a literal, mechanical fashion, if the Act arguably prohibits or protects the conduct at issue, then otherwise applicable state law is ordinarily preempted. Local 926, Int'l Union of Operating Eng'rs, AFL-CIO v. Jones, 460 U.S. 669, 676 (1983) (citation omitted).
 
 
 13
 Slone contends that Martin Marietta and the Union had not reached an impasse in their negotiations for a new bargaining agreement. We will analyze Slone's implied contract claims in accordance with this view of the facts.
 
 
 14
 After expiration of a bargaining agreement, and before impasse, an employer must maintain the status quo and abide by the terms and conditions of employment as set out in the expired bargaining agreement. Derrico v. Sheehan Emergency Hosp., 844 F.2d 22, 26 (2d Cir.1988); Laborers Health & Welfare Trust v. Advanced Lightweight Concrete Co., Inc., 779 F.2d 497, 500 (9th Cir.1985), aff'd, 484 U.S. 539 (1988). An employer's failure to honor the terms and conditions of the expired agreement while negotiations are pending constitutes bad faith bargaining in breach of section 8 of the NLRA. See NRLB v. Katz, 369 U.S. 736, 743 (1962); Gratiot Community Hosp. v. NLRB, 51 F.3d 1255, 1261 (6th Cir.1995). Therefore, a state law claim alleging conduct constituting a violation of the terms of a bargaining agreement after expiration, but before impasse, is preempted by the NLRA. Bassette v. Stone Container Corp., 25 F.3d 757, 760 (9th Cir.1994) (citation omitted).
 
 
 15
 Through his breach of implied contract claims, Slone is simply alleging that Martin Marietta acted contrary to the terms of the expired bargaining agreement, conduct which is arguably prohibited by section 8 of the Act. For example, Slone admitted that the "past practices" giving rise to his implied contract claims were established and governed by the terms of the expired bargaining agreement. Indeed, Slone's complaint explicitly states that the disability loan agreement was "part of the [expired] collective bargaining agreement." Further, the grievances filed on Slone's behalf were based on various provisions of the expired agreement. Resolution of Slone's implied contract claims as matters of state law "involves too great a danger of conflict with national labor policy." San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 246 (1959). Accordingly, we hold that Slone's implied contract claims are preempted.
 
 B.
 
 16
 Slone also challenges the district court's ruling that his intentional infliction of emotional distress claim is preempted by federal labor law. Slone's complaint specifically states that "[t]he conduct of Martin Marietta in discharging the Plaintiff ... inflicted emotional distress ... upon [Plaintiff] and he has suffered mental anguish and depression." Before the district court, in response to defendant's motion for summary judgment, Slone pointed only to his deposition testimony and his affidavit, wherein he claimed that Martin Marietta representatives insulted and verbally abused him during his worker's compensation hearings, that he had heard from other employees that a Martin Marietta representative had said that Slone was blacklisted because of his filing worker's compensation claims, and that private detectives and a Martin Marietta representative parked outside his house and followed him frequently between 1991 and 1992.
 
 
 17
 While it is true that not all state law tort claims arising in connection with a labor law dispute will be preempted by federal law, see Farmer v. United Bhd. of Carpenters & Joiners of Am., 430 U.S. 290 (1977), it is also true that to avoid preemption, such claims must raise conduct which the state has a substantial interest in regulating, and the state's interest must be one that does not unduly threaten to interfere with the federal regulatory scheme. Id. at 302. In Farmer, the Court held that the particular facts alleged raised a state law claim of intentional infliction of emotional distress that was not preempted; however, the Court made it clear that its decision "rest[ed] in part on our understanding that California law permits recovery only for emotional distress sustained as a result of 'outrageous' conduct. The potential for undue interference with federal regulation would be intolerable if state tort recoveries could be based on the type of robust language and clash of strong personalities that may be commonplace in various labor contexts." Id. at 305-06. Thus, whether Slone's claims of outrageous conduct on the part of Martin Marietta are preempted by federal labor law must be determined with reference to the requirements of Ohio law governing actions alleging intentional infliction of emotional distress.
 
 
 18
 When the Ohio Supreme Court recognized a cause of action for intentional infliction of emotional distress in Ohio, it adopted the RESTATEMENT'S standard:
 
 
 19
 One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress....
 
 
 20
 ....
 
 
 21
 ... It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.
 
 
 22
 Yeager v. Local Union 20, 453 N.E.2d 666, 671 (Ohio 1983) (quoting RESTATEMENT (SECOND) OF TORTS § 46(1) and cmt. d (1965)). Furthermore, the courts of appeals in Ohio have held that summary judgment is appropriate in intentional infliction of emotional distress claims. See Burkes v. Stidham, 668 N.E.2d 982, 990 (Ohio Ct.App.1995); Deoma v. City of Shaker Heights, 587 N.E.2d 425, 432 (Ohio Ct.App.1990).
 
 
 23
 It is clear that in order to state a claim under Ohio law for intentional infliction of emotional distress, a plaintiff must allege conduct that is considerably more egregious than anything that Slone has alleged in this action. Before the district court, Slone claimed emotional distress only as a result of his discharge, and the district court dealt with the emotional distress claim only in that context, holding that it was preempted by federal labor law. Clearly, the district court did not err in that conclusion. Even if we were inclined to consider this evidence in the broader context in which Slone now offers it--that apart from any issue concerning his discharge, this activity of Martin Marietta was outrageous and designed to inflict emotional distress--we would find that it does not state a claim that survives summary judgment. Slone has wholly failed to present evidence of conduct on the part of Martin Marietta that would reach the level of the extreme and outrageous conduct required by Yeager.
 
 C.
 
 24
 In Ohio, " '[a] claim for loss of consortium is a derivative action, deriving from a spouse's claim for bodily injury.' " See Fox v. Parker Hannifin Corp., 914 F.2d 795, 802 (6th Cir.1990) (quoting Tomlinson v. Skolnik, 540 N.E.2d 716, 719 (Ohio 1989), overruled by Schaefer v. Allstate Ins. Co., 668 N.E.2d 913 (Ohio 1996)). Because Donald Slone's state law claim for the intentional infliction of emotional distress was properly dismissed, the judgment of the district court dismissing Vicki Slone's loss of consortium claim is affirmed.
 
 III. CONCLUSION
 
 25
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 The Honorable Wendell A. Miles, United States District Judge for the Western District of Michigan, sitting by designation